[No. 8394.   Department Two.   January 19, 1910.]

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, *Plaintiff*, v. FLORENCE ANNETTA OLIVER *et al.*, *Defendants*.[1]

INDEMNITY—MORTGAGES—CONSTRUCTION. A mortgage given to a bonding company to secure against loss on an indemnity bond of the mortgagor, a building contractor, or upon any other bonds which he might require, covers loss under a bond issued to another and required by him in pursuance of the arrangement on advice that the mortgagor was interested in the contract.

SAME—AGREEMENT TO SAVE HARMLESS—ATTORNEY'S FEES INCURRED. A mortgage to secure against loss on an indemnity bond, agreeing to protect the mortgagee harmless against all liability by reason of becoming surety on the bond, covers reasonable attorney's fees incurred in resisting liability upon the bond.

MORTGAGES — FORECLOSURE — ATTORNEY'S FEES — REASONABLENESS. The sum of $1,000 is not an unreasonable attorney's fee in the foreclosure of an indemnity mortgage, although the total amount of the judgment was but $7,000, where the suit was strenuously resisted and the record was voluminous.

APPEAL — REVIEW.— FINDINGS—CONFLICTING EVIDENCE. Findings will not be disturbed where there was a close question of fact, decided upon oral evidence.

[1] Reported in 106 Pac. 483.

Cross-appeals from a judgment of the superior court for Spokane county, Sullivan, J., entered August 9, 1909, upon findings in favor of the plaintiff, in an action to foreclose a mortgage, but denying a personal judgment, after a trial before the court without a jury.   Affirmed.

*Danson & Williams*, for plaintiff.
*Crow & Richardson* and *John C. Kleber*, for defendants.

PARKER, J.—This is a suit to foreclose an indemnity mortgage, executed and delivered by defendant Oliver and wife to the plaintiff, and also to obtain a personal judgment against both Oliver and wife as well as the community.   Upon a trial, the court rendered judgment against Oliver and the community, and decreed the foreclosure of the mortgage against all the defendants, but refused to render personal judgment against Mrs. Oliver.   Defendants Edgar A. Oliver and Clara M. Tull appealed separately, and the plaintiff appealed because the court declined to render personal judgment against Mrs. Oliver.

The rights of the parties here involved rest upon facts shown by the record, which may be summarized as follows: On May 31, 1902, the defendants Oliver and wife, executed and delivered to the plaintiff an indemnity mortgage upon the real property here involved, the recitals and provisions of which, so far as necessary for us to notice, are as follows:

"Whereas said E. A. Oliver is engaged in the business of contracting and building and whereas in his work of contracting and building he is required to give bonds to secure the performance of contracts which he may undertake and whereas· the mortgagee is engaged in the business of becoming surety on bonds and requires surety from the parties for whom it becomes surety and whereas at the special instance and request of the mortgagors and in consideration of this instrument the mortgagee has consented to become surety on the bond of said E. A. Oliver to be written to N. F. Curti in the sum of One Thousand Dollars ($1,000.) and upon the same consideration has consented to become surety

and upon other bonds for said E. A. Oliver to the extent of
($10,000) ten thousand dollars in the aggregate and where-
as the parties hereto have agreed that said mortgagors shall
give said mortgagee a mortgage upon the real estate herein
described to protect the mortgagee harmless from and against
any and all liability which it may incur or suffer by reason
of executing said bond or any other bonds as surety for
said E. A. Oliver, said mortgagee agreeing to execute same
only upon the express condition that this mortgage be given
as security therefor and whereas it is intended that this
mortgage shall be running and continuing security to the
extent of bonds to the amount of ten thousand dollars
($10,000), now therefore this instrument witnesseth that in
consideration of the premises and of one dollar ($1.00) to
them in hand paid, said mortgagors have by this instrument
bargained, sold, conveyed, and mortgaged to the mortgagee,
that certain lot or parcel of ground lying and being in the
County of Spokane, State of Washington, more properly
described as follows:

" 'Lots one (1) and two (2) in block one hundred and
twelve (112) fourth addition to Railroad Addition to Spo-
kane Falls (now Spokane) Spokane County, Washington.

" 'This mortgage is made upon condition that said mort-
gagors and both of them shall and will protect said mort-
gagee harmless from and against any and all liability which
it may incur by reason of becoming surety upon the bond of
said E. A. Oliver to N. F. Curti and upon any other bonds
which he may require hereafter to the extent of ten thousand
dollars ($10,000) in the aggregate. Now therefore, if said
mortgagors shall truly and faithfully perform said con-
ditions and shall save mortgagee harmless from any and all
liability upon bonds which it shall execute as surety for said
E. A. Oliver and shall have all bonds so executed duly and
regularly released, discharged and exonerated, then this ob-
ligation shall be void and the mortgagee shall thereupon
immediately release this mortgage, but if said mortgagee
shall incur any liability by reason of becoming surety upon
said bond to N. F. Curti or upon any other bonds which it
may execute as surety for said E. A. Oliver and said mort-
gagee shall deem it advisable to pay such liability or liabili-
ties and shall pay same, then and in either of such cases,
said mortgagee may immediately bring action to foreclose

this mortgage and may do so as often as there are any liabilities and as there remains an equity in said mortgaged real estate and in any and all of such foreclosure actions, said mortgage shall include in addition to the costs and disbursements thereof, a reasonable attorney's fee to be allowed by the court, which shall be included in the judgment rendered in such foreclosure.' "

This mortgage was duly recorded in the office of the auditor of Spokane county on June 17, 1902. Oliver continued in the business of contracting and building until after incurring the obligation sued upon in this action. On or about March 1, 1906, J. A. Colson & Son were engaged in the contracting and building business, and were then about to obtain contracts for the construction of certain buildings, and being unable financially to perform such contracts or to obtain the necessary bonds to secure the faithful performance thereof, for the purpose of taking and performing such contracts, and furnishing the necessary bonds to secure the faithful performance thereof, a contract was entered into between the defendant Oliver and J. A. Colson & Son, as follows:

"Spokane, Washington, March 20th, 1906.
"This Memoranda of Agreement made and entered this day between J. A. Colson and J. W. Colson (J. A. Colson & Son) first parties, and E. A. Oliver, second party witnesseth:

"That whereas the First Parties have secured contracts for the erection of a residence on the corner of Ninth Avenue and Cedar St. in Spokane, from Alfred Coolidge at the Contract price of Twelve Thousand Eight Hundred Sixty-Eight Dollars ($12,868.00) for the erection of a residence on lots Eleven (11) and Twelve (12) Block Twenty-nine (29) Brown's Addition in Spokane from J. Roemer at the contract price of Five thousand two hundred dollars ($5,200.00) and for the erection of a building on lot nineteen (19), Block Eight (8) Havermale Addition to Spokane from Charles J. Kapps at the contract price of Sixteen thousand nine hundred ninety four dollars ($16,994.00).

"And whereas as the said first parties are required to give bonds for the faithful performance of each of said contracts and are unable themselves to give or secure such bonds, and

are without the necessary capital and money to carry on said contracts;

"And whereas the second party can give and secure said bonds, and can advance the necessary means to carry on said contracts;

"Now, Wherefore, on consideration of the premises it is hereby mutually agreed between said parties:

"(1)   That the second party at once secure and furnish the necessary bonds for the faithful performance of said three contracts.

"(2)   That the second party at once advance the necessary funds to pay for labor and material on said contracts until sufficient estimates are received thereon to carry on said contracts.

"(3)   That all estimates and payments on account of each said contract shall be paid and deposited by the Owners or their agents in the Traders National Bank at Spokane to the joint credit and account of E. A. Oliver and J. A. Colson.

"(4)   That said moneys so deposited shall be withdrawn only on the joint check signed by both E. A. Oliver and J. A. Colson, and shall be checked out only for the purpose of paying labor and material claims on said contracts and the repayment of advances therefore made by said E. A. Oliver until said contracts are completed and said buildings accepted and all claims for labor and material paid.

"(5)   That during the progress of said work J. A. Colson and J. W. Colson shall each be paid the sum of Ten Dollars ($10.00) every week while said work progresses, which money shall be checked out from the estimates deposited in the bank, or if there are not sufficient funds therefor to be advanced by second party.

"(6)   That upon the completion of any or all of said contracts the moneys expended on such contract shall be accounted for only by proper checks and receipts therefor and after paying all labor and material claims on such contract and all advances of the second party thereon the remaining profits of said contracts shall be divided and the first parties shall each receive one quarter of said profits and the second party one-half of said profits.

"(7)   That in the event there shall be found to be a loss in carrying on and completing of any of said contracts, it is agreed that such loss shall be deducted and paid from the

profits remaining on the completion of any of the other con-
tracts before such profits are divided.

"(8)    The ten dollars ($10.00) a week so paid to each J.
A. Colson & J. W. Colson shall be deducted from their share
or portion of the profits.

"(9)    It is agreed that the first parties shall keep proper
time books for all labor employed which shall be open to the
inspection and check of the second party and that moneys for
labor on said contracts shall be paid out by check each week
according to their proper time.

"(10)    It is agreed that moneys shall be checked out and
paid to material men and the contractors only upon the pro-
duction of proper voucher and receipt for such material or
sub-contract.

"(11) It is agreed a strict and separate account be kept of
all moneys advanced, and all estimates received on such con-
tract and of all labor and material therefor and that the first
parties shall not be entitled to demand or receive anything
over said sum of $10.00 a week until the completion of said
contracts.                        J. W. Colson,

"James A. Colson, First parties,

"Executed in duplicate.

"E. A. Oliver, Second party."

The contracts for the construction of the buildings were
entered into in the name of J. A. Colson & Son.  The interest
of the defendant Oliver in the building contracts was not then
disclosed to the parties for whom the buildings were to be
constructed, but was made known to the plaintiff.  The build-
ing contracts required the contractors to give bonds for the
faithful performance of the contracts.  The defendant Oliver,
in pursuance of his contract with J. A. Colson & Son, re-
quested the plaintiff to execute the necessary bonds to secure
the faithful performance of the contracts, advising plain-
tiff of his interest therein.  Prior to plaintiff's executing the
bonds, it demanded of Oliver that a formal indemnity agree-
ment should be executed by him and his wife, indemnifying it
against loss growing out of its liability upon the bonds exe-
cuted at request of Oliver for the faithful performance of
the building contracts.  The plaintiff having caused such

indemnity agreement to be prepared, it was delivered to Oliver for execution by himself and wife, and a few days later was returned to plaintiff signed by Oliver and also with the purported signature of his wife thereto. The signing of this agreement by Mrs. Oliver is one of the disputed questions of fact found by the trial court in her favor, which we will notice later in connection with the question of her alleged personal liability. Thereupon the bonds securing the faithful performance of the building contracts were executed by the plaintiff.

There was a failure in the performance of the building contracts, and a failure to pay all claims for labor and material used in the construction of the buildings and a failure to complete them; liens, therefore, were filed and foreclosed against the properties, and the owners were thereby compelled to, and did, pay the amounts thereof found due by the court in the foreclosure suits, in order to protect their properties. Thereafter the owners commenced action against the plaintiff upon the bonds given by it for the faithful performance of the contracts, and such proceedings were had that, in December, 1907, and January, 1908, judgments were regularly entered in the superior court for Spokane county in favor of the owners and against the plaintiff as surety, which judgments plaintiff was compelled to pay, aggregating the sum of $6,403.66.

The defendants Oliver and wife were notified by plaintiff of the pendency of the lien foreclosure suits against the owners, and given full opportunity to appear and defend the same. In protecting its interest in the lien foreclosure suits, and in defending the action of the owners against the plaintiff upon the bonds executed by it to secure the faithful performance of the contracts, it was compelled to, and did, employ attorneys and become obligated to such attorneys for their services in the sum of $500, which the trial court finds to be a reasonable sum for such services.

On January 3, 1907, after the defaulting in the building

contracts and after it was known there would be a large loss on the contracts, Oliver and wife conveyed to Clara M. Tull, by general warranty deed, the real property involved. The court found this deed was given without consideration and for the purpose of defrauding creditors, and particularly the plaintiff. The court found that $1,000 was a reasonable attorney's fee in this foreclosure. The court rendered judgment against Oliver and the community for the amount paid by plaintiff in settlement of the judgment rendered against it in the suit upon the building contract bonds, amounting, with interest, to $7,012; also, for $500 attorney's fees incurred in defending that suit and lien foreclosure suits, and also for $1,000 attorney's fees in this cause; and decreed foreclosure of the indemnity mortgage against all the defendants, and refused to render personal judgment against Mrs. Oliver.

Numerous exceptions were taken by defendants to the findings of the learned trial court from which the foregoing facts are largely drawn; but, with the exception of the disputed fact as to Mrs. Oliver signing the indemnity agreement, and possibly as to the Tull deed being fraudulent, we regard the exceptions as relating to minor matters and having, in view of our conclusions, but little if any influence in determining the ultimate rights of the parties. We have read all of the several hundred pages of testimony and exhibits, and regard the facts fully established as above related.

The first contention of learned counsel for the defendants is, that the indemnity mortgage, which is the foundation of this action, does not include within its terms the liability sued upon, and for which the judgment was rendered and the mortgage was foreclosed. In view of our conclusions upon the rights of the parties, this becomes the principal question in the case. It is argued that the terms of this mortgage do not indemnify the plaintiff against any default, save only such default as may be incurred in a build-

ing contract in which the defendant Oliver becomes the sole
contractor, for the faithful performance of which contract
plaintiff may have executed a bond.  We find practically no
aid to the solution of this question in the authorities cited.
It is simply a question of the intention of the parties to the
mortgage, to be drawn from the language used.  It is therein
recited:

"This mortgage is made upon condition that said mort-
gagors and both of them shall and will protect said mort-
gagee harmless from and against any and all liability which
it may incur by reason of becoming surety upon the bond of
said E. A. Oliver to N. F. Curti and upon any other bonds
which he may require hereafter to the extent of $10,000 in
the aggregate."

It seems to us from this language, taken in connection with
the general purpose of the giving of the mortgage, which was
evidently to promote the interests of the community by en-
abling Oliver to work to its profit, a profit resulting equally
as beneficial to Mrs. Oliver as to himself, the security thereby
pledged to plaintiff was not confined exclusively to contracts
in which Oliver alone was to become interested, but that the
terms of the mortgage are broad and comprehensive enough
to indemnify the plaintiff in cases where it executes bonds at
the request of Oliver, to secure the faithful performance of
contracts in which he has a substantial interest in the profits
to be derived therefrom, even though he may not be en-
titled to the whole of the profits, and where he has joint con-
trol.   Such was Oliver's interest in and relation to these
contracts by virtue of the agreement between him and J. A.
Colson & Son.   That Oliver had a substantial interest in
these contracts was well known to plaintiff at the time of
executing the bonds, we think is clearly shown ; though it may
be admitted that it did not know of all the details of such
interest.   It was for Oliver and by reason of his credit and
its relations with him that the plaintiff executed these bonds,
as much so as if the bonds had been given in his name as

principal instead of J. A. Colson & Son. This is evidently the view entertained by the learned trial court, because it found that Mrs. Oliver did not sign the indemnity agreement, hence that agreement did not extend the terms of the mortgage, or lend any aid in the solution of the question of the mortgage security extending over the bonds given upon these contracts. We are of the opinion that the mortgage, unaided by any additional agreement, includes the liability which is the basis of this judgment and decree.

Our conclusion as to the force and effect of the terms of the mortgage disposes of the appeal of Mrs. Tull, since the mortgage was of record long before she obtained her deed to the premises, and of course her rights were subject to the mortgage even if she received her deed free from fraud. This renders it unnecessary to discuss the question of fraud in this conveyance, though we are inclined to the views of the learned trial court upon this question as an additional ground for holding that Mrs. Tull acquired no rights as against those of the mortgagee.

It is contended in behalf of defendants that the $500 attorney's fees incurred by the plaintiff in protecting its interest in the lien foreclosure suits, and in defending the suit upon the bonds by the property owners against it, is not within the terms of the mortgage. By its terms we find that the mortgagors "shall and will protect said mortgagee harmless from and against any and all liability which it may incur by reason of becoming surety upon . . . bonds . . .," etc. We think an expense of this nature incurred in resisting liability upon the bonds is within the terms of the mortgage. It was certainly the duty of the plaintiff to render its liability upon the bonds as small as possible, and to that end employ counsel to resist that liability when it was sought to be established by litigation. This expense was incurred in the interest of the defendants. It is not contended that plaintiff unnecessarily employed counsel, or that the expense incurred was unreasonable in amount.

It is further contended by learned counsel for defendants that the allowance of an attorney's fee of $1,000 in this foreclosure is unreasonable in amount, and should in no event have been more than $700. It may be conceded that in an ordinary foreclosure suit, where the total amount of the judgment is only $7,000, the amount here allowed as attorneys' fees would appear rather excessive; but in view of the strenuous manner in which this foreclosure has been resisted, as evidenced by the voluminous record before us, we are unable to say the discretion of the trial court has been abused in the allowance made.

Upon the plaintiff's appeal there is presented the single question of the personal liability of Mrs. Oliver, and this depends upon the single question of fact as to whether or not she signed the indemnity agreement, which, by its terms, purported to obligate her personally. The evidence is in serious conflict upon this question of fact. A reading of the evidence convinces us it is a close and difficult question to decide. It rests upon a large amount of oral testimony, in addition to a comparison of her genuine signature with the one in question. Under such circumstances, we conclude that the learned trial court, who heard and saw the witnesses testify, correctly found that she did not sign this indemnity agreement, and that being the only basis upon which she could be rendered personally liable, the plaintiff's appeal is not well founded.

The judgment and decree is affirmed. Neither party will recover costs incurred in the appeals to this court.

RUDKIN, C. J., MOUNT, CROW, and DUNBAR, JJ., concur.